IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNNAMED MOTHER, individually and as
parent and next friend of JANE DOE, a minor,

        Plaintiffs,

v.                                                                                            No. 1:25-cv-00154-KWR-SCY

UNITED STATES OF AMERICA,

        Defendant.

## ORDER AND OPINION GRANTING THE UNITED STATES'S MOTION TO DISMISS

THIS MATTER comes before the Court on the United States's motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), Doc. 8. After reviewing the parties' briefs and the relevant legal principles, the Court finds that the United States's motion is well taken, and therefore, is **GRANTED**. The case is dismissed without prejudice.

### BACKGROUND

Plaintiff Unnamed Mother brings this lawsuit on behalf of her minor daughter, Jane Doe. Doc. 1 at 4, ¶ 19; *see* Fed. R. Civ. P. 17(c). Plaintiff and Jane Doe are enrolled members of a federally recognized Indian Tribe[1] in New Mexico. Doc. 1 at 4, ¶ 20. From 2015 to 2019, Plaintiff was in a relationship with Daniel Madalena, a former Governor of the Pueblo of Jemez and a

---

[1] The Court uses the term "Indian Tribe" throughout the opinion when referring to federally recognized Indigenous communities generally to track the terminology used in federal regulations. *See* Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs ("BIA List"), 89 Fed. Reg. 99,899 (Dec. 11, 2024) ("This notice publishes the current list of 574 Tribal entities recognized by and eligible for funding and services from the [BIA] by virtue of their status as *Indian Tribes*." (emphasis added)). The Court uses the term "Pueblo" when referring to the Pueblo of Jemez.

1

prominent religious leader within the Pueblo. Doc. 1 at 5, ¶¶ 29–30. Plaintiff alleges that, during this time, Madalena sexually abused Jane Doe on multiple occasions. Doc. 1 at 5, ¶¶ 34–37.

In June 2024, Madalena was charged with two counts of Criminal Sexual Contact of a Minor in the Pueblo of Jemez Tribal Court. Doc. 1 at 6, ¶ 51. The Pueblo of Jemez Police Department referred the investigation to the FBI to prosecute Madalena under the Major Crimes Act, 18 U.S.C. § 1153. Doc. 1 at 6, ¶ 54.

The United States did not formally charge Madalena. Plaintiff alleges either that the FBI Agent tasked with investigating the case, referred to in the complaint as the "Unknown FBI Agent," terminated the investigation without referral for prosecution, or that the FBI referred the case for prosecution, but the United States Attorney declined to go forward with a prosecution. Doc. 1 at 8, ¶ 68. Plaintiff claims that neither the Unknown FBI Agent nor the United States Attorney subsequently coordinated with Jemez law enforcement officials regarding the status of the investigation and the use of evidence, including evidence collected during a forensic interview with Jane Doe. Doc. 1 at 8, ¶ 69. Plaintiff alleges that the FBI Agent's or United States Attorney's failure to coordinate with Jemez law enforcement breached their duties established under 25 U.S.C. § 2809. Doc. 1 at 8, ¶ 69. Plaintiff also alleges that this inaction violated the United States's treaty and trust obligations. Doc. 1 at 8, ¶ 70.

Plaintiff now claims that the United States, through the FBI Agent's or United States Attorney's negligence performance of their official duties, is liable in tort. Doc. 1 at 10–11. This negligence, Plaintiff claims, resulted in Plaintiff and Jane Doe being injured and caused substantial damage. Doc. 1 at 9, ¶ 73. Plaintiff brings claims for negligence and negligence per se under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b).

# DISCUSSION

The United States's motion requires the Court to decide whether dismissal is proper under Federal Rules of Civil Procedure 12(b)(1). The Court concludes that it is. *See infra* section II.

## I.   Legal Standard

Federal courts can dismiss a case for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The Court has subject matter jurisdiction over a civil suit brought against the United States only if it has waived its sovereign immunity. *See United States v. Orleans*, 425 U.S. 807, 814 (1976); *Garling v. EPA*, 849 F.3d 1289, 1294 (10th Cir. 2017). "Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction" or "(2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citation omitted). Here, the United States's Rule 12(b)(1) motion is an attack on the facial sufficiency of the complaint's allegations as to subject matter jurisdiction because it argues that the claims fall within the discretionary function exception to the FTCA's waiver of sovereign immunity, 28 U.S.C. §§ 2680(a), and because Plaintiff fails to state a claim under the FTCA, 28 U.S.C. § 1346(b)(1). *See* Doc. 8 at 5. The Court therefore "presume[s] all of the allegations contained in the . . . complaint to be true." *Ruiz*, 299 F.3d at 1180; *see also Garling*, 849 F.3d at 1293–94.

## II.   Analysis

The Court concludes that it cannot exercise subject matter jurisdiction because the claims in this case fall within the discretionary function exception to the FTCA. *See infra* section A. Even if the discretionary function exception does not apply, the Court concludes that Plaintiff fails to state a claim under the FTCA. *See infra* section B.

3

A. <u>The Court lacks subject matter jurisdiction over this case because Plaintiff's claims fall under the discretionary function exception to the FTCA.</u>

The Court does not have subject matter jurisdiction because Plaintiff's claims fall under the discretionary function exception to the FTCA. *See Garcia v. United States*, 533 F.3d 1170, 1175–76 (10th Cir. 2008) ("If the discretionary function exception applies to the challenged conduct, the United States retains its sovereign immunity[,] and the district court lacks subject matter jurisdiction to hear the suit." (citation and internal quotations omitted)). "The FTCA allows those injured by federal employees to sue the United States for damages." *Martin v. United States*, 145 S. Ct. 1689, 1695 (2025). "The statute achieves that end by waiving, in 28 U.S.C. § 1346(b), the federal government's sovereign immunity for '*certain torts* committed by federal employees acting within the scope of their employment.'" *Id.* (citing *Brownback v. King*, 592 U.S. 209, 212 (2021)) (emphasis added); *see also Garcia*, 533 F.3d at 1175 ("The FTCA waives sovereign immunity for actions against the United States resulting from injuries caused by the negligent acts of government employees while acting in the scope of their employment.").[2] "But the statute's waiver is subject to 13 exceptions that claw back the government's immunity in certain circumstances." *Martin*, 145 S. Ct. at 1695.

One such exception is the discretionary function exception, which bars "[a]ny claim" based on a government official's "discretionary function." *See* 28 U.S.C. § 2680(a).[3] This exception

---

[2] "[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

[3] "The provisions of . . . section 1346(b) of this title shall not apply to (a) [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of

4

"poses a jurisdictional prerequisite to suit, which the plaintiff must ultimately meet as part of his overall burden to establish subject matter jurisdiction." *Garcia*, 533 F.3d at 1175 (citing *Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1995)) (internal quotations omitted).

Courts apply a two-part test "[t]o determine whether conduct falls within the discretionary function exception." *Garcia*, 533 F.3d at 1176 (citing *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). The Court must first "ascertain the precise governmental conduct at issue and consider whether that conduct was 'discretionary,' meaning whether it was 'a matter of judgment or choice for the acting employee.'" *Id.* (citing *Berkovitz*, 486 U.S. at 536). "Conduct is not discretionary if 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Id.* (citing *Berkovitz*, 486 U.S. at 536). "It is the nature of the conduct, rather than the status of the actor, that governs whether the exception applies." *Gaubert*, 499 U.S. at 322 (citing *United States v. Varig Airlines*, 467 U.S. 797, 813 (1984)) (citation modified).

Once the Court determines that the complained-of conduct was "discretionary" under a statute, regulation, or policy, the Court next considers "whether the decision in question is one requiring the exercise of judgment based on considerations of public policy." *Garcia*, 533 F.3d at 1176 (citing *Berkovitz*, 486 U.S. at 536–37). This reflects Congress's desire to "protect policymaking by the executive and legislative branches of government from judicial 'second-guessing.'" *Id.* at 1176 (citing *Varig Airlines*, 467 U.S. at 814). "When established governmental policy . . . allows a [g]overnment agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *United States v. Gaubert*, 499 U.S. 315, 324 (1991). "The focus of the inquiry is not on the agent's subjective intent in exercising

---

a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

5

discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325.

"[I]f a plaintiff can establish that either element is not met, the plaintiff may proceed because the exception does not apply." *Garcia*, 533 F.3d at 1176 (citing *Gaubert*, 499 U.S. at 325). Absent from this analysis is the factual question of whether the government official(s) abused their discretion or negligently discharged their duties. *See id.* ("[T]he question of negligence is irrelevant." (citing *Aragon*, 146 F.3d at 822)); *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1538 (10th Cir. 1992) ("Our sole inquiry . . . is to determine whether Plaintiffs have overcome the discretionary function exception by pleading facts sufficient to demonstrate a clear waiver of sovereign immunity."); 28 U.S.C. § 2680(a) (stating that the discretionary function exception applies "whether or not the discretion involved be abused").

Plaintiff asserts that the discretionary function exception does not apply to government conduct under 25 U.S.C. § 2809. At issue are two subsections:

- "[I]f a law enforcement officer or employee of any Federal department or agency terminates an investigation of an alleged violation of Federal criminal law in Indian country without referral for prosecution, the officer or employee shall coordinate with the appropriate tribal law enforcement officials regarding the status of the investigation and the use of evidence relevant to the case in a tribal court authority over the crime alleged." 28 U.S.C. § 2809(a)(1).
- "[I]f a United States Attorney declines to prosecute, or acts to terminate prosecution of, an alleged violation of Federal criminal law in Indian country, the United States Attorney shall coordinate with the appropriate tribal justice officials regarding the status of the investigation and the use of evidence relevant to the case in a tribal court with authority over the crime alleged." 28 U.S.C. § 2809(a)(3).

While Plaintiff concedes that these subsections "contain elements of discretion," she argues that the Unknown FBI Agent's and United States Attorney's conduct under these sections is not discretionary because the statute leaves government actors no choice but to coordinate with tribal law enforcement regarding the status of an investigation and the use of evidence relevant to the

case. Doc. 13 at 3–4; *see also* Doc. 1 at 7–8, ¶¶ 63, 69–70. The Court finds that Plaintiff does not establish that either prong of the discretionary function exception is not met, and therefore, the United States remains immune from Plaintiff's lawsuit.

        1.   <u>The governmental conduct at issue is discretionary</u>.

Plaintiff fails to establish that the Unknown FBI Agent's or United States Attorney's conduct under 25 U.S.C. §§ 2809(a) is not discretionary.[4] *See Garcia*, 533 F.3d at 1175. The statutory provisions at issue command FBI Agents and United States Attorneys to "coordinate with the appropriate tribal justice officials regarding [1] the status of [an] investigation and [2] the use of evidence relevant to [a] case in a tribal court with authority over the crime alleged" when an Agent terminates an investigation or a United States Attorney declines a prosecution. 25 U.S.C. §§ 2809(a)(1), (3). At a high level of generality, this appears to provide a non-discretionary command: When X occurs (an FBI Agent terminates an investigation or a United States Attorney declines a prosecution), the government actor must do Y (he must cooperate with tribal justice

---

[4] Plaintiff also alleges that the United States failed "to honor its legal, treaty, and trust responsibilities," which includes a "duty to exercise fostering care and protection over all depending indigenous Tribes and their members." *See* Doc. 1 at 7–8, ¶¶ 56, 59, 70. But Plaintiffs' vague references to the United States's treaty and trust obligations insufficiently establishes a waiver of the United States's sovereign immunity under the FTCA. Plaintiff does not cite to specific language of any treaty between the United States and an Indian Tribe or describe a particular obligation with any specificity. *See Daigle*, 972 F.2d at 1538 (explaining that a plaintiff must point to "a specific and mandatory regulation, statute[,] or policy"). Plaintiff continues to omit references to specific treaty obligations in its response brief, Doc. 13 at 3–4. It is also unclear how a treaty lends itself to the discretionary function exception analysis (or fits into the FTCA at all) because treaties generally define the obligations of the United States—which Congress effectuates by enacting legislation—not of any individual government employee. *See generally Medellin v. Texas*, 552 U.S. 491, 505 (2008) ("A treaty is . . . 'primarily a compact between independent nations' . . . . [and] ordinarily 'depends for the enforcement of its provisions on the interest and the honor of the governments which are parties to it.'" (citing *Head Money Cases*, 112 U.S. 580, 598 (1884)). Plaintiffs do not point to any self-executing Indian treaty provisions or legislation that operationalizes an Indian treaty by creating specific duties for the executive branch to carry out.

7

officials concerning the status of the investigation and the discovery of relevant evidence). But a mandatory directive alone is not enough; the section of the statute regulating conduct must also be "specific," meaning it leaves "no room for choice or judgment." *See Gaubert*, 499 U.S. at 324; *Aragon*, 146 F.3d at 823 ("[T]he prescribed course of conduct [must] be specific and mandatory.").

The conduct regulated under §§ 2809(a) is discretionary because it does not "prescribe[] a course of action for [the] employee[s] to follow." *See Garcia*, 533 F.3d at 1176. Congress left several operative terms contained in §§ 2809(a) undefined, which in turn leaves the government employees considerable discretion to perform their statutory obligations. The statute requires a government agent to coordinate with tribal officials after a specified triggering event occurs (terminating an investigation or declining a prosecution). *See* 25 U.S.C. §§ 2809(a)(1), (3). It then lists two areas, the status of the investigation and the use of evidence relevant to the case, as the objects of the coordination (or *what* to coordinate about). *See id*. But the statute leaves the specifics of coordination (or *how* to coordinate) to the Agent or United States Attorney responsible for the decision to terminate the investigation or decline the prosecution in the first place. *See Powers v. United States*, 996 F.2d 1121, 1124 (11th Cir. 1993) ("If a government official in performing his statutory duties must act without reliance upon a fixed or readily ascertainable standard, the decision he makes is discretionary." (citation omitted) (citation modified)). Indeed, the nature of the conduct at issue—cooperation—is not readily defined by concrete terms and foreseeably varies in its manner and method, timing, and scope of communications depending on the circumstances. An FBI Agent's or United States Attorney's general duty to cooperate under § 2809(a) therefore invariably "involves 'a matter of choice' or judgment." *See Aragon*, 146 F.3d at 823; *Ohlsen v. United* States, 998 F.3d 1143, 1161–62 (10th Cir. 2021) (explaining that "the directive to 'inspect' the Pueblo's work was 'too general to remove the discretion' from the government's conduct in

8

determining how or when to inspect the Pueblo's work" (citing *Tippett v. United States*, 108 F.3d 1194, 1197 (10th Cir. 1997))); *Varig Airlines*, 467 U.S. at 819–20 (concluding that an agency's "implementation of a mechanism for compliance review is plainly discretionary activity"); *Duke v. USDA*, 131 F.3d 1407, 1410 (10th Cir. 1997) (explaining that a policy requiring Forest Service employees to "safely guide, regulate, warn or advise the public" is "not specific enough to eliminate the Forest Service employees' choice regarding how to act in particular circumstances").

The government employee's discretion under § 2809(a) extends beyond shaping the contours of cooperation. The statute requires the FBI Agent or United States Attorney to coordinate with "*appropriate* tribal justice officials." 25 U.S.C. §§ 2809(a)(1), (3) (emphasis added). But the statute does not define who constitutes an "appropriate" official because what is considered appropriate varies based on the circumstances. *See Sossamon v. Texas*, 563 U.S. 277, 286 (2011) ("[T]he word 'appropriate' is inherently context dependent."). To this point, limiting the class of persons who will receive sensitive information regarding an investigation to those who are appropriate (rather than instructing the government official to coordinate with *all* tribal justice officials) is an important measure to protect victims' safety and privacy. To illustrate, in this case, the government officials involved may have properly determined that it was not appropriate to share sensitive evidence collected during Jane Doe's forensic interview with any Jemez law enforcement officials because of the perpetrator's status and political connections in the Pueblo of Jemez. The statute also does not define what evidence is "*relevant* to the case" or list specific documents that the Agent or United States Attorney must disclose. *See* 25 U.S.C. §§ 2809(a)(1), (3) (emphasis added). The term "relevant," like the term "appropriate," is not defined by concrete terms and instead incorporates the judgment of the actor carrying out a statute's mission. *See generally Aragon*, 146 F.3d at 824 (explaining that the phrase "as may be practicable" is a "prime

example of discretionary language" because it gives "federal agencies a choice or judgment on what action to take, if any" (citation modified)).

To summarize, the statute contains a broad, largely undefined overarching command to "coordinate" and the terms "relevant" and "appropriate" within its single paragraph. This establishes that the government officials tasked with carrying out the statute maintain substantial discretion. More generally, federal investigators and prosecutors regularly exercise considerable discretion in carrying out their various duties. *See JGE ex rel. Tasso v. United States*, 772 F. App'x 608, 612 (10th Cir. 2019) (unpublished) ("As a general matter, law enforcement decisions surrounding the investigation and prosecution of crimes . . . involve the exercise of discretion." (citing *Gonzalez v. United States*, 814 F.3d 1022, 1028 (9th Cir. 2016))); *Hobdy v. United States*, 968 F.2d 20, at *2 (10th Cir. 1992) (unpublished) ("Deciding how to . . . present evidence to the proper authorities are classic examples of immunized prosecutorial conduct . . . [and is] exactly the type of conduct the discretionary function exception was intended to protect from judicial branch interference." (citation omitted)); *Awad v. United States*, 807 F. App'x 876, 880 (10th Cir. 2020) (unpublished) ("[T]he manner in which law enforcement agents conduct their investigation and identify suspects involves elements of choice."). It would make little sense for legislators in Washington to place investigators and prosecutors in the field into a statutory straitjacket by removing their ability to use discretion when deciding what sensitive information is appropriate to divulge and how to go about doing it.

2. The governmental conduct at issue requires the exercise of judgment based on public policy.

As established *supra* section A.1, Plaintiff did not meet her burden to establish the first prong of the discretionary function exception. Plaintiff also fails to rebut the presumption that "the decision in question is one requiring the exercise of judgment based on public policy." *See Garcia*,

533 F.3d at 1176 (citing *Berkovitz*, 486 U.S. at 536–37); *Gaubert*, 499 U.S. at 324. For starters, Plaintiff does not even address the second prong in her response. *See* Doc. 13 at 3–4. Because Plaintiff has the burden to establish subject matter jurisdiction, *see Garcia*, 533 F.3d at 1175, the Court assumes that she does not contest the second prong.

The Court nonetheless concludes that Plaintiff cannot rebut the strong presumption that the nature of an FBI Agent's and United States Attorney's conduct performed under 25 U.S.C. §§ 2809(a)(1), (3) requires "the exercise of judgment based on considerations of public policy" and are "susceptible to policy analysis." *See Garcia*, 533 F.3d at 1176 (citing *Berkovitz*, 486 U.S. at 536–37, & *Gaubert*, 499 U.S. at 325); *Gaubert*, 499 U.S. at 325 ("[I]f a regulation allows the employee discretion, the very existence of the regulation creates a *strong presumption* that the discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." (emphasis added)). Congress passed the Indian Law Enforcement Reform Act, 25 U.S.C. §§ 2801–2815, "to increase coordination and communication among Federal, State, tribal, and local law enforcement agencies." Pub. L. No. 111-211, § 202, 124 Stat. 2258, 2262–63 (2010). The statutory provisions Plaintiff invokes directly further this purpose by requiring FBI Agents and United States Attorneys to "coordinate with appropriate tribal justice officials" after terminating an investigation or declining a prosecution. *See* 28 U.S.C. §§ 2809(a)(1), (3). The official conduct authorized by §§ 2809(a) thus "involves consideration of the same policies which led to the [passing] of the [statute]." *See Gaubert*, 499 U.S. at 325 & n. 7. Under this statute, government actors must balance practical realities of allocating scarce departmental resources and risks to victims' safety and privacy with the overall goal of increasing coordination and communication with Indian Tribes. *See, e.g.*, *Daigle*, 972 F.2d at 1541–42 ("The administrator must balance overall [statutory] priorities . . . with the realities of finite resources

11

and funding considerations."); *Johnson v. United States*, 949 F.2d 332, 339 (10th Cir. 1991) (explaining that a Park Ranger's "decision if, when[,] or how to rescue inherently involves the balancing of safety objectives against such practical considerations such as staffing, funding[,] and minimizing government intrusion"); *Redmon ex rel. Redmon v. United States*, 924 F.2d 1151, 1157 (10th Cir. 1991) ("[T]he FAA inherently must balance the ultimate goal of air safety against 'the reality of finite agency resources.'" (citing *Varig Airlines*, 467 U.S. at 820)); *Aragon*, 146 F.3d at 826 (explaining that the military weighed groundwater protection policies "against broader public and military policies"). Indeed, investigatory and prosecutorial decisions are generally grounded in public policy. *See Hobdy*, 968 F.2d 20, at *2; *Taitt v. United States*, 770 F.2d 890, 893–94 (10th Cir. 1985). The government actors' conduct is likewise susceptible to policy analysis; a legislator can assess whether the benefits of increasing coordination and communication with Pueblos outweigh its costs in practice. As a result, the United States maintains its sovereign immunity. *See Gaubert*, 499 U.S. at 323 ("[T]he actions of Government agents involving the necessary element of choice and grounded in the social . . . or political goals of the statute . . . are protected.").

      B. <u>Even if the discretionary function exception does not apply, Plaintiff fails to state a claim under the FTCA</u>.

The Court lacks subject matter jurisdiction over this case because Plaintiff's claims fall under the discretionary function exception. *See supra* section A. But even if the discretionary function exception does not apply, the Court continues to lack subject matter jurisdiction because Plaintiff fails to state a claim under the FTCA. *See DeWalt v. United States*, 2022 WL 971893, at *2 (10th Cir. 2022) (unpublished) ("If the plaintiff cannot show that, under state law, a 'private individual under like circumstances' could be liable in tort, the plaintiff's claims are jurisdictionally barred."). Plaintiff brings claims for negligence and negligence per se. Doc. 1 at 10–11. The United States argues that these claims, under the facts specific to this case, do not meet

the requirements of 28 U.S.C. § 1346(b)(1), and therefore, Plaintiff cannot use the FTCA to vindicate her alleged injuries in federal court. *See* Doc. 8 at 16.

A private plaintiff can bring a tort claim against the United States only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). This is commonly referred to as the "private analogue requirement." *See Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012). This means that, "[e]ven if specific behavior is statutorily required of a federal employee, the government is not liable under the FTCA unless state law recognizes a comparable liability for private persons." *Ayala v. United States*, 49 F.3d 607, 610–11 (10th Cir. 1995) (citation omitted); *see also Carlson v. Green*, 446 U.S. 14, 23 (1980) ("[A]n action under the FTCA exists only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward."); *United States v. Olson*, 546 U.S. 43, 44 (2005). Plaintiff therefore must establish that New Mexico law (the place where the act or omission occurred) "would impose liability on private persons or corporations under similar circumstances." *See Rayonier Inc. v. United States*, 352 U.S. 315, 318 (1957).

Under New Mexico law, "a negligence claim requires [1] the existence of a duty from a defendant to a plaintiff, [2] breach of that duty, which is typically based upon a standard of reasonable care, and [3] the breach being a proximate cause and cause in fact of the plaintiff's damages." *Herrera v. Quality Pontiac*, 73 P.3d 181, 185–86 (N.M. 2003). Plaintiff does not provide a private state law analogue to the FBI Agent's and United States Attorney's obligation to cooperate with tribal officials under 25 U.S.C. § 2809(a). Because Plaintiff has the burden to establish subject matter jurisdiction, *see Garcia*, 533 F.3d at 1175, the Court presumes that Plaintiff does not rely on § 2809(a) for its negligence claim. Instead, Plaintiff focuses on the United

13

States's alleged failure to honor its general "treaty" and "trust" responsibilities. *See* Doc. 1 at 8, ¶ 70. Plaintiff alleges that the United States "owes a duty to exercise fostering care and protection over all dependent Indigenous Tribes and their members," and that this duty "resembles that of a ward to his guardian." Doc. 1 at 7, ¶¶ 56, 59. Plaintiff's complaint suggests that the FBI Agent's or United States Attorney's failure to cooperate with Tribal law enforcement infringed upon this duty. Doc. 1 at 8, ¶ 70. Plaintiff argues that her negligence claim satisfies the private analogue requirement because New Mexico recognizes negligence claims against guardians who fail to care for their ward. *See* Doc. 13 at 5–6.

The Court concludes that the duties a guardian owes to his ward under New Mexico law is an insufficient private analogue to the duties the United States purportedly owes to Indian Tribes.[5] New Mexico law lists specific powers and duties a guardian owes to a protected person. *See* N.M. Stat. Ann. § 45-5-312. This includes having custody of the protected person; to provide care,

---

[5] Plaintiff relies on two United States Supreme Court decisions to establish that the United States owes duties to Indian Tribes akin to an individual guardian and his ward. In *Cherokee Nation v. Georgia*, the Court explained that because the Cherokee Nation is "in a state of pupilage," their "relations to the United States *resemble* that of a ward to his guardian." 30 U.S. 1, 17 (1831) (emphasis added). But this decision did not declare that the United States was the legal guardian of the Cherokee Nation, or any other Indian Tribe, or establish specific duties the United States owes to Indian Tribes. The statement is also plainly dictum. *See Dictum*, Black's Law Dictionary 454 (6th ed. 1990) ("[A]n observation or remark made by a judge in pronouncing an opinion upon a cause, concerning some rule . . . but not necessarily involved in the case or essential to its determination."). Plaintiff also cites *United States v. Sandoval*, a case in which the Supreme Court decided "whether the status of the Pueblo Indians and their lands is such that Congress competently . . . can prohibit the introduction of intoxicating liquor into those lands notwithstanding the admission of New Mexico to statehood." 231 U.S. 28, 38 (1913). While deciding this question, the Court explained that "long continued legislative and executive usage and an unbroken current of judicial decisions have attributed to the United States as a superior and civilized nation the power and duty of exercising a fostering care and protection over all dependent Indian communities within its borders." *Id*. at 45–46. But this brief digression does not establish specific duties the United States owes to Indian Tribes or establish that the United States is a legal guardianship of the Indian Tribes. In short, these decisions do not, without more, establish specific legal duties the United States owes to the Pueblo of Jemez and its members.

comfort, and maintenance, including taking reasonable care of the person's property and providing education or training; making health care decisions; and to exercise supervisory powers in the least restrictive way by following standards established in the National Guardianship Association standards of practice. N.M. Stat. Ann. § 45-5-312(B). Plaintiff points to no *specific* enumerated responsibilities of this kind (or duties that carry with it a standard of care) that government employees must provide to members of Pueblos and instead relies on the general "duty to exercise . . . care and protection." *See* Doc. 13 at 5–6. And Plaintiff does not direct attention to any state law requiring guardians to conduct investigations into potential crimes, and then to coordinate with law enforcement as part of their general duty to exercise care over a protected person. A sovereign's performance of the general duty to care for and protect another sovereign is dissimilar to an individual guardian's duty to care for a protected person; the nature of the United States's relationship with Indian Tribes in this context is simply to aid one another in the prosecution of crimes that occur on tribal lands, *see* Pub. L. No. 111-211, § 202, 124 Stat. 2258, 2262–63 (2010), while a general guardian's duties are derived from the need to protect and care for an "incapacitated person" who has "mental and physical limitations." *See* N.M. Stat. Ann. § 45-5-301.1. General guardians, because of this power dynamic, are treated as fiduciaries and are charged with a higher standard of care. *See Collins ex rel. Collins v. Tabet*, 806 P.2d 40, 49 (N.M. 1991), *abrogated on other grounds by State v. Mares*, 543 P.3d 1198 (N.M. 2023) ("Fiduciaries, of course, are subject to liability to their wards for harm resulting from ordinary negligence in the discharge of their fiduciary duties; if anything, they are charged with a *higher* standard of care than are persons who do not owe fiduciary duties." (emphasis in original)). Plaintiff does not allege that the United States owes fiduciary duties to the Pueblo of Jemez or that its employees are subject to a higher standard

of care in their interactions with Tribal law enforcement. Considering these substantial differences, the Court finds that Plaintiff failed to provide a sufficient state law private analogue.

Plaintiff next argues that her claim for negligence per se, based on the FBI Agent's or United States Attorney's failure to cooperate with tribal law enforcement under 25 U.S.C. § 2809(a), has several state law private analogues. *See* Doc. 13 at 6–10; Doc. 1 at 11. Plaintiff is mistaken. Under New Mexico law, negligence per se requires a statue to "define[] a standard of conduct," meaning that the "statute or regulation defines the duty with specificity." *Heath v. La Mariana Apartments*, 180 P.3d 664, 666 (N.M. 2008) (citing *Abeita v. Northern Rio Arriba Elec. Coop.*, 946 P.2d 1108, 1116 (N.M. Ct. App. 1997) (Hartz, J.)). A statute does not define a duty with specificity "where duties are undefined, or defined only in abstract or general terms, leaving it to the jury to evaluate the factual circumstances of the particular case to determine whether the defendant acted reasonably." *Id.* at 667 (citing *Abeita*, 946 P.2d at 1116) (citation modified). "The task for any court, then, is one of statutory construction to determine whether the statutory or regulatory provisions at issue define with specificity what is 'reasonable' in a particular circumstance, such that the jury does not have to undertake the inquiry." *Id.*

As discussed at length above, 25 U.S.C. § 2809(a) leaves investigators and prosecutors with substantial discretion to decide how to best coordinate with tribal law enforcement. *See supra* section A.1. The statute does not define what it means to "coordinate" with any specificity. It also contains several discretionary terms, such as "appropriate" and "reasonable," without defining (or providing a standard for) what is appropriate or reasonable under a particular circumstance. In short, New Mexico law would not permit a cause of action for the alleged misconduct to go forward. *See Carlson*, 446 U.S. at 23.

**CONCLUSION**

The Court does not have subject matter jurisdiction in this case because the United States did not waive its sovereign immunity from the claims in this case under the FTCA. *See* Fed. R. Civ. P. 12(b)(1).

**It is THEREFORE ORDERED** that the United States's motion to dismiss, Doc. 8, is granted.[6]

>                          /S/
> KEA W. RIGGS
> UNITED STATES DISTRICT JUDGE

---

[6] This case is properly dismissed *without* prejudice. *See Rural Water Sewer and Solid Waste Mgmt., Dist. No. 1, Logan Cnty., Okla. v. City of Guthrie*, 654 F.3d 1058, 1069 n. 9 (10th Cir. 2011) ("[A] dismissal on sovereign immunity grounds . . . must be without prejudice."); *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999) ("Article III deprives federal courts of the power to dismiss a case with prejudice where federal subject matter jurisdiction does not exist.").